27742. GRIGGS *v.* LUMBERMEN'S MUTUAL CASUALTY
COMPANY, *et al.*

DECIDED NOVEMBER 25, 1939. REHEARING DENIED DECEMBER 19, 1939.

*Louis Geffen,* for plaintiff.

*Haas, Gambrell & Gardner,* for defendants.

STEPHENS, P. J.  Clarence Griggs filed with the Industrial
Board of Georgia a claim for compensation against West Lumber
Company and its insurance carrier, Lumbermen's Mutual Casualty
Company, arising out of alleged injuries suffered by him while in
the employ of the lumber company and engaged in the performance
of the duties of his employment.  It appeared from the evidence
adduced upon the hearing before the single director that the claim-
ant and another employee of the company were engaged in unload-
ing six hundred sacks of cement from a railroad-car on to trucks,
each bag weighing about ninety-four pounds; that immediately
after unloading this cement, which took about forty minutes, the
claimant felt a weakness in his knees; that five or ten minutes after
reaching the mill of his employer the claimant fell and caught him-
self; that on being told to go out and rest in the sun the claimant

started out of the mill and fell once more; that he fell again, and when his condition appeared to be such that he was unable to continue working he was taken home; and that when he left the mill he was unable to use his left arm and left leg properly. It also appeared that he had suffered a hemorrhage of the brain, which resulted in paralysis of his left arm and left leg.

The medical evidence on behalf of the claimant was that his ailment was precipitated by undue physical exertion; that the claimant's doctor believed this because it happened immediately following the physical exertion; that exerting labor causes one's blood pressure to increase by the heart becoming more active, and increased blood pressure frequently causes a broken blood vessel; that two men unloading a car of cement in about forty minutes, each bag weighing about ninety pounds, would tend to increase the blood pressure of the individual; and that such labor could cause the rupture of a cerebral blood vessel. This doctor testified that in his opinion the claimant's injury was due to increased blood pressure, with the breakdown of one of the blood vessels, due to the physical strain of the work the claimant had just completed when the paralysis occurred. The doctor for the employer and the insurance carrier stated that such physical exertion might have had something to do with the cerebral hemorrhage of the claimant. It appeared also that the claimant, a negro man about forty-eight years of age, had a blood pressure higher than normal, and in addition had arteriosclerosis which is a hardening of the arterioles, or small arteries, which condition of the claimant was of the most gradual development. There was evidence that the physical exertion preceding the paralysis caused the pre-existing infirmities to produce the paralysis. The physician for the defendants testified that the weakening of the minute blood veins was the result of the high blood pressure and arteriosclerosis over a period of years, and the fact that the leakage occurred shortly after the physical exertion was a bare coincidence and could have happened whether the claimant was asleep, resting, playing, or working.

The director found "as a matter of fact that claimant worked continuously loading heavy bags of cement for a period of approximately forty minutes and unduly exerted himself, and the exertion and heavy work" of unloading "the cement raised his blood pressure and aggravated pre-existing condition and disease of

high blood pressure and arteriosclerosis, caused a hemorrhage of the brain which resulted in a paralysis of his left arm and left leg." The director then found that the claimant had sustained an accidental injury arising out of and in the course of his employment and that he was totally disabled therefrom, and awarded compensation accordingly. From this award the employer and insurance carrier appealed to the full board which affirmed the award of the single director and found that there was "ample evidence to sustain the findings of fact of the hearing director," and approved his findings of fact and conclusions of law. Thereupon the employer and the insurance carrier appealed to the superior court where their appeal was sustained and the findings and award of the Industrial Board were reversed. To this judgment the claimant excepted.

"'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment and shall not include a disease in any form except where it results naturally and unavoidably from the accident." Code, § 114-102. To be compensable the disease must arise out of, or result from an accident or injury arising out of, and in the course of, the employment. If the facts show a causal connection between the injury and the development of the disease the victim of the disease is entitled to compensation. A traumatic disease, as distinguished from an ideopathic disease, is one which is caused by physical injury and is compensable. It has been held that a cerebral hemorrhage due to excessive heat is an traumatic disease, and compensable. Johnson v. The Torrington, 1 B. W. C. C. 68. Also, overexertion causing a cerebral hemorrhage is a traumatic disease, and compensable. McInnes v. Dunsmuir, 1 B. W. C. C. 226.

But in this case the claimant had arteriosclerosis at the time he engaged in this work and lifted these sacks of cement. The rule is that where a previously diseased condition of a claimant for compensation under the workmen's compensation act is aggravated by an injury or accident arising out of and in the course of the employment, and this results in disability to the claimant, there is a compensable injury. *Pruitt* v. *Ocean Acc. &c. Cor.*, 48 *Ga. App.* 730 (3) (173 S. E. 238). This doctrine is supported by many cases. See 19 A. L. R. 96, and notes; 28 A. L. R. 204, and notes. In Beck Min. Co. v. State Ind. Com., 88 Okla. 34 (211 Pac.

69, 28 A. L. R. 197), it was held that where the evidence showed that the claimant, an elderly man affected with hardening of the arteries, had to do work which required great physical exertion, and while so engaged suffered a stroke of apoplexy, and there was competent medical testimony that the continuous physical exertion which he had to undergo was a contributing cause of the stroke, an award for compensation would be upheld. In that case the court said, citing authorities, that it was not necessary for the claimant "to receive some external blow in order for his injury to be compensable under the workmen's compensation act of this State." Paralysis due to cerebral hemorrhage, in one already suffering from arteriosclerosis, because of prolonged exertion, was held within the operation of the compensation act providing compensation for accidental injuries in LaVeck v. Parke, Davis & Co., 190 Mich. 604 (157 N. W. 72, L. R. A. 1916D, 1277). Also see Crosby v. Thorp, 206 Mich. 250 (172 N. W. 535, 6 A. L. R. 1253); W. A. Jones Foundry & Machine Co. v. Ind. Com., 303 Ill. 310 (135 N. E. 754); Milwaukee v. Ind. Com., 160 Wis. 238 (151 N. W. 247); Haskell & Barker Car Co. v. Brown, 67 Ind. App. 178 (117 N. E. 555); Almquist v. Shenandoah Nurseries, 218 Iowa, 724 (254 N. W. 35, 94 A. L. R. 573), and see 71 C. J. 610, § 364, and cit.

In the case under consideration there was evidence that the claimant knew that he had high blood pressure and a diseased condition of the small arteries when he undertook to lift these sacks of cement as he did, but he did not expect the result to be the rupture of a blood vessel causing paralysis of his left arm and left leg. While he intended to do the continuous work in lifting these sacks which the situation demanded, he did not anticipate that because of doing so his blood pressure would be so increased as to result in the rupture of a cerebral blood vessel. According to the medical testimony adduced on the claimant's behalf that result can be traced to the exertion resulting from the continuous work of lifting the six hundred sacks of cement, weighing around ninety-four pounds each, within about forty minutes. It can not be held as a matter of law that such lifting did not constitute continuous exerting labor on the part of the claimant.

"Where an employee, while engaged in the work of his employment, aggravates or accelerates the condition of diseased blood ves-

sels, thereby causing death or disability, it may constitute an injury of a character such as to come within the meaning of workmen's compensation acts authorizing compensation for injuries, accidental injuries, accidental personal injuries, personal injuries, personal injuries by accident, or personal injuries resulting' from a sudden and tangible happening of a traumatic nature, produc· ing a prompt result and occurring from without. This rule has been held applicable where the employee ruptured a. blood vessel or accelerated or aggravated an aneurism, even though the blood vessel was in such a diseased condition that it would have finally produced the injury, and might have happened when the employee was merely walking around or lying in his bed." 71 C. J. 610, § 364. See, in support of the text, Carson Payson Co. v. Industrial Commission, 340 Ill. 632 (173 N. E. 184); Hull's Case, 125 Me. 135 (131 Atl. 391); Patrick v. J. B. Ham Co., 119 Me. 510 (111 Atl. 912, 13 A. L. R. 427). "The aggravation, acceleration, or lighting up of a pre-existing or latent infirmity or weakened physical condition may constitute a disability of such a character as to come within the meaning of workmen's compensation acts authorizing compensation for injuries, personal injuries, accidental injuries, accidental personal injuries, injuries from fortuitous accident, or personal injuries by accident, even though the accident would have caused no injury to a perfectly normal, healthy individual. Such acts contemplate latent or dormant ailments; they make no distinction between those having some structural weakness which renders them liable to injury from some unexpected sudden accident. It is not necessary, in order for an employee to recover compensation as an injured workman, that he must have been in perfect health or free from disease at the time he received the injury. Every workman brings with him to his employment certain infirmities; his employer takes him as he finds him and assumes the risk of a diseased condition aggravated by injury. Compensation is not made to depend upon the condition of health of the employee, or upon his freedom from liability to injury through a constitutional weakness or latent tendency; compensation is awarded for an injury which is a hazard of the employment, and it is the hazard of the employment acting upon the particular employee in his condition of health and not what that hazard would be if acting upon a healthy employee or upon the

average employee." 71 C. J. 603, 604, § 358. In support are Hartz *v.* Hartford Faience Co., 90 Conn. 539 (97 Atl. 1020), and other cases.

In *Berkeley Granite Cor.* v. *Covington,* 183 *Ga.* 801 (190 S. E. 8), and *Simmons* v. *Elowah Monument Co.,* 42 *Ga. App.* 633 (157 S. E. 260), the employee in each case contracted a disease called silicosis, a disease caused from granite dust and such like entering the lungs, while working about granite. The court in each case held that this was an occupational disease and was not caused from accident, and that therefore was not compensable under the provisions of the workmen's compensation act. Whereas, in the case now before this court, the evidence authorized a finding that the claimant's disability, which consisted in paralysis due to a cerebral hemorrhage, was caused from continuous exerting labor in lifting heavy objects while he was suffering from arteriosclerosis. The claimant was not suffering from an occupational disease growing out of the nature of his work. Therefore the cases above cited are clearly distinguishable from the case now before the court and are not authority demanding that compensation be denied.

It is our opinion that the award of the Industrial Board was supported by the evidence, and that the judge of the superior court erred in sustaining the appeal of the employer and of the insurance carrier and in reversing the award of the Industrial Board.

*Judgment reversed. Sutton, J., concurs. Felton, J., dissents.*